## Gilbert's Adm'r v. Allen.

(Decided May 8, 1936.)

WM. LEWIS & SON for appellant.

C. R. LUKER for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

John C. Gilbert, administrator of the estate of Joe Gilbert, brought this action in the Laurel circuit court against Charles E. Allen, as growing out of the death of Joe Gilbert, caused, it was alleged, by defendant's negligence when so driving his truck as to strike and kill him.

The uncontradicted evidence shows that the accident occurred about 6:30 or 7 o'clock of the evening of March 17, 1934, or "just about the edge of dark," when the deceased, Joe Gilbert, was walking along the Dixie highway in the town of Lily, Laurel county, Ky., and was run into and struck by a Dodge motortruck approaching him from behind and then owned and operated by the appellee, Charles Allen.

The plaintiff charged in his petition that the defendant, Charles Allen, was at the time operating his truck in a careless and negligent manner and at a greater speed than was reasonable and proper and at more than 35 miles per hour; that he failed to keep his truck under control or to keep a lookout for persons and pedestrians on and near said highway in front of him; that he failed to sound the horn of his truck or to give any warning of his approach or to reduce its speed, as ordinary care required; and that, by reason of the defendant's negligence while so driving his truck, the decedent was struck and killed.

Defendant answered, traversing the allegations of the petition and pleading contributory negligence, which was in turn traversed by reply.

The evidence for plaintiff, as testified to by his several witnesses, who were nearby or present and saw the accident and the conditions and circumstances under which it occurred, is in substance that the deceased, Joe Gilbert (then nineteen years of age and a student and senior in the Corbin High School), and the defendant's truck were at the time both going in the same direction towards London, Ky.; that Gilbert was in front and walking along the eastern edge of the highway, on or near the shoulder of it; that the truck after striking Gilbert ran some 100 feet beyond the point where it struck him; that at that time it was running at a speed of some 35 to 45 miles an hour; that the right wheels of the truck, as shown by the tracks made, were at the point of striking the deceased off the hard surface of the highway from 1 to 2 feet; that the defendant and another person were at the time in the truck; and that no sound of a horn or other signal or warning was heard by the witnesses to have been given the deceased signaling the truck's rapid approach.

Further evidence for plaintiff was that the highway, at this point where deceased was struck, is some 25 feet wide, or wide enough for three cars to pass, and that the road from there extends straight in its course in either direction, enabling one to see for a mile distant, up or down the road. Further, a map was introduced in evidence purporting to show that the point upon the highway where the deceased was struck and killed by defendant was in a closely built-up business or residence portion of the town of Lily, and therefore that the defendant when going 25 to 35 miles per hour was driving at an excessive rate of speed, made prima facie negligent by the applicable provisions of the statute in such case. Section 2739g-51, as amended by Acts 1930, c. 79 (Ky. Stats. Supp. 1933, sec. 2739g-51).

Oliver Estridge, a witness for plaintiff, testifies that he was at the time of the accident riding in the truck with the defendant, Allen, who was then driving and the owner of the truck and that he was going at a speed of from 25 to 35 miles per hour; that as they approached the place of the accident they met a car, which looked like it was going to hit the truck, when Allen "cut out;" that the light of the approaching car

blinded Allen so he could not see the road until it passed, when he then discovered the deceased some 12 or 15 feet ahead, walking on the right side of the road; that Allen blew his horn and "it looked to him like Allen tried to avoid hitting him and was slowing down"; that the deceased was then walking on the berm or off the hard surface of the road; and that "the right wheels of the truck were not much off the road's hard surface."

On cross-examination he stated that Allen blew the truck's horn, but that he could not say that he slackened his speed; that he could see the boy walking ahead until he got even with him; that "the front end of the truck didn't strike him, but that he was struck by the body of the truck, which stuck out."

At the close of plaintiff's evidence, defendant asked for a directed verdict, which was overruled.

Defendant, then testifying for himself, stated that the accident occurred on the Dixie Highway some three or four hundred feet south of Lily; that he was at the time going about 25 miles an hour; that he met a car with bright lights, which was followed by a one light car, just before he struck deceased; that he twice dimmed his lights, but that the approaching car did not do so, and that he was so blinded by the glare of its lights that he could not see ahead until it got even with him, when he then discovered the boy walking along the right edge of the hard metal of the road some 25 feet ahead of him; that he then "sounded his horn and cut over on the road as far as he could to keep from hitting him"; and that "he cut so hard, the back of his truck swerved and hit him." He stated that he did not blow his horn in warning of his approach upon this occasion, except as here stated, but that he blew it once before, when some 300 yards lower down on the road, when he had there seen a man crossing it. When further asked if he did not know that when going 25 or 30 miles an hour he was going 30 to 40 feet per second, he only answered that "he cut back as quickly as he could."

Also, defendant when testifying was asked by his attorney if he had any insurance upon his truck. Upon plaintiff's objection to such incompetent question

as improper, it was sustained and the jury admonished by the court that they would not consider it.

At the close of the testimony, both plaintiff and defendant offered instructions, which were refused, and in lieu thereof, the instructions of the court were given the jury. Upon submission of the case, the jury returned a verdict, finding for the defendant, upon which judgment was entered.

Plaintiff's motion and grounds for a new trial having been overruled, he has appealed.

First, appellant insists that the court erred in refusing to give his offered instruction X, whereby the jury was instructed in substance that where a highway passes through a closely built-up portion of any city or town, if the rate of speed of passing automobiles thereon exceeds 15 miles per hour, that such excess speed is prima facie evidence of unreasonable and improper driving.

Whatever may be the merit of such contention, plaintiff cannot be here heard to complain that he was prejudiced by the court's refusal to give his offered instruction when by instruction No. 1, which it gave, the jury was instructed that it was the duty of the defendant to operate his truck "on the right side of the highway and to regulate its speed not to exceed twenty miles per hour." Such instruction, though we deem it erroneous in form (Wight v. Rose, 209 Ky. 803, 273 S. W. 472), was yet clearly more liberal and favorable to the plaintiff than he was entitled to have given, under the rule as laid down by this court in Utilities Appliance Co. et al. v. Toon's Adm'r, 241 Ky. 823, 45 S. W. (2d) 478, as to the proper form of instructions which should be given concerning the effect of driving beyond the speed rates as provided and set out in section 2739g-51, Kentucky Statutes.

In view of such being our conclusion, that plaintiff's contention on this point is without merit, it becomes unnecessary for us to consider the further questions raised in connection therewith as to whether defendant was at the time of the accident driving in the closely built-up residence or business portion of a town or whether or not the community of Lily came within the provision of the statute, as in fact being

a sixth class or incorporated town. Also, this section of the statute (2739g-51) has been repealed as to trucks. Nehi Bottling Co. et al. v. Flannery, 264 Ky. 68, —— S. W. (2d) —.

However, we are further of the opinion that the court's instruction No. 1, as given, was prejudicially erroneous as failing to properly cover the law of the case arising out of the facts here in evidence, to which it was addressed.

This instruction No. 1 was thus inadequate and misleading in that part of it which directed the jury that it was the duty of the defendant, at the time, place, and under the conditions mentioned in the evidence, when driving his truck *"to sound the horn of said truck, or give other warning of his approach;* to keep a lookout ahead for persons using or having a right to use the highway at the place mentioned in evidence; and to exercise ordinary care for the safety of and to prevent injury to persons and vehicles using or having a right to use the highway at the time and place and on the occasion mentioned in the evidence."  (Italics ours.)

The instruction, in thus directing the jury that it was required only to find from the evidence that defendant had, at some time before striking the deceased, sounded the horn of his truck, or that its finding of any blowing of the horn by defendant, giving warning to the deceased, would in itself satisfy the requirement of the statute, as giving a sufficient warning of his approach, regardless of whether or not such signal was so timely given as to serve as a reasonable warning to the pedestrian ahead, was erroneous, and it is our opinion that the instruction as so given, without limitation or qualification whatever with respect to the then existing circumstances, failed to interpret the protective intent and duty to reasonably warn, imposed by section 2739g-28, Kentucky Statutes, in requiring every person operating an automobile or bicycle on the public highways to "sound said horn or other sound device *whenever necessary as a warning* of the approach of such vehicle to pedestrians, or other vehicles." (Italics ours.)

The defendant testified that he, upon the occasion in evidence and as complying with this require-

ment of the statute to sound his horn in necessary warning of his approach, did twice sound it; first, when some 300 yards down the road, where he saw some one then crossing the highway, and again when only within some 15 to 25 feet of the deceased, after discovering his presence on the road just ahead of his truck.

In view of defendant's admitted statement that he was then driving at the rate of 25 miles an hour, or, as testified by other witnesses, from 35 to 40 miles an hour, when so approaching the deceased, his claimed sounding of his horn, when within such distance, gave to deceased but a fraction of a second's notice of his running him down and it can hardly be considered that such a sounding of his horn by defendant, made under such conditions, served to give to deceased any real or reasonable warning of his imminent danger from the truck's approach. Certainly the blowing by defendant of his horn under such conditions fails to measure up to or meet the duty imposed upon the defendant driver by the statute, to sound his horn when necessary as a warning of his approach. Such a futile, vain, and belated warning, as it is shown was here given, was clearly insufficient to afford any opportunity or means of escape to the pedestrian thus warned of the impending peril of injury from being struck by the approaching vehicle, nor can it be held to measure up to the duty imposed by the statute upon the driver of a vehicle, or truck, to blow his horn where found necessary for warning the threatened user of the highway. Clearly, the warning it directs under such circumstances to be given, not coming within the sudden appearance rule, must be such a sounding of the horn as serves, its time and place considered, to warn in such a way as affords some opportunity to the pedestrian to escape the impending danger warned against.

The court's instructions as given we consider subject in such respect to the criticism, as shown by the jury's verdict, that it permitted the jury to find that defendant's mere sounding of the horn, though sounded within the very second deceased was struck and killed, constituted a valid performance of his duty to sound his horn in warning of his approach imposed by the statute. It is our opinion that the sounding of the

horn, when so given, could not serve as a reasonable warning, nor was it in anywise such a reasonable or timely notice, as we construe the statute requires, as afforded an opportunity to the deceased to escape from the threatened peril.

Appellant's further contention that the jury's verdict was palpably against the evidence we are inclined to regard as also meritorious, in that, the · evidence being here such as set out supra and the court having instructed the jury that it was the duty imposed upon defendant "to keep a lookout ahead for persons using or having a right to use the highway at the place mentioned," the jury found that such duty was here discharged by defendant.

The evidence is that defendant was blinded by the lights of an approaching car, while he was rapidly driving his truck to the point upon the highway where he struck and killed the deceased. He admits that he was so blinded by the lights that he could not see ahead nor was able to keep a lookout, as was properly directed by the instruction, but that nonetheless, without stopping, he only somewhat slackened his speed and drove blindly ahead. Further, the witness Estridge, who was in the truck at the time with defendant, testifies that defendant's slowing of his speed at this time was so slight, if at all, that he could not say that he slackened his speed.

Clearly the defendant was not entitled to claim that he was keeping a lookout ahead, within the meaning of the court's instruction, when admitting that he could not keep a lookout, because of his being then blinded, but yet blindly drove ahead.

Therefore, it results that the jury's verdict finding· for the defendant, and therefore finding that he had not failed in his lookout duty, we are of the opinion is flagrantly and palpably against the evidence.

Having reached such conclusion with respect to the error in the instruction given, as well as the verdict of the jury being flagrantly against the evidence in the respect indicated, the judgment for such errors is reversed, the cause remanded, and a new trial granted consistent with this opinion.