## Chappell et al. v. Doepel.

Feb. 19, 1946.

E. L. Morgan for appellants.

R. S. Rose and R. L. Pope for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appellee, a man past 80 years of age, recovered a joint and several judgment for $1,000 against appellants on account of bodily injuries received when struck by Chappell's truck, then being driven by Estes. On appeal reversal is urged because the court erred in (1) declining to sustain motion for peremptory made at the close of all the evidence; (2) in the giving of instructions, and (3) because of improper argument of plaintiff's counsel.

The accident occurred, as best we can gather, around 9:30 a. m., February 21, 1944. Appellee had been to McLaughlin's store, situated about 25 feet from the highway; made some purchases and was carrying a bag of oranges in one hand. He left the store, stepped to the edge of the highway and flagged a bus which was coming from Harlan, going toward his home. In his testimony he said that when reaching the edge of the highway he looked in both directions and saw nothing approaching from the direction of the forks of the road, estimated to be 300 feet or more from the store. The bus was approaching the store on the other side of the road from the store. Upon his signalling, the bus slowed down; appellee says he took two steps toward the other side of the road when he was struck. It appears from his and other evidence that the front of the truck missed him but the right-hand corner struck him knocking him down, resulting in severe injuries, according to his and the testimony of members of his family.

At the time he emerged from the store there was a wholesale grocery truck, the driver engaged in unloading merchandise and taking it into the store. This truck was off the highway with the rear near the store door, and was headed up the Middle Fork road. Appellee says he saw this truck, but asserted that he did not step from behind it into the highway. He denied that he was watching the bus, and not seeing the truck ran into the side of it.

Dan Killon and his wife were passengers on the bus coming from Harlan, going in the direction from which the truck was approaching. The road was straight from the store and some distance beyond, coming from Harlan, to a point where the road forked, as said about ''300 feet or more'' from the store. He said he saw the approaching truck, and saw appellee as he stepped to the highway, throw up a little bag, and the bus began to slow down; he thought appellee took about three steps and was struck. He said the truck as it approached was making around 50 miles per hour; he heard no horn blow, nor did he notice any slackening of speed of the truck. He could not say whether appellee looked in both directions. Mrs. Killon, who was with her husband, testified that she did not see the truck strike appellee. She did see the approaching truck and said it was going ''pretty fast,'' but did not see appellee as he came onto the high-

way. She said the truck went "a long way" after it struck appellee. The foregoing is in substance the proof on which appellee relied.

Estes said that when he came into the Martin's Fork road he first reduced his speed and then resumed a speed of 20 to 25 miles per hour. He blew his horn some distance from the store, not for the purpose of warning appellee, whom he did not see at the time, but to warn the man unloading the truck in front of the store. He said that appellee stepped out from the front of the unloading truck when he was within about a truck length away; he pulled slightly to the right to miss appellee, but for fear he would run into the bus veered to the left, and appellee stepped into the front left side of his truck. It was drizzling rain at the time. Estes did not apply his brake because of a fear of skidding.

Several witnesses were introduced whose proof tended to corroborate Estes' version, some going to the extent of saying appellee stepped into the roadway and to the side of the truck without looking in its direction. Some of them say they did not see the on-coming truck, but one witness said that he saw it and one called to appellee to stop. Thus it will be seen that the evidence was sharply conflicting. Some criticism is made of the testimony of Killon, who said he was on the bus. Killon was a coal loader, and the manager of the mine for which he was working testified that Killon loaded 13 tons of coal on the 21st, the day of the accident. The mine record showed, as the manager stated, that Killon worked on the 21st but did not work on the 22d. Comment is also made on his inability to show the approximate time when the injury occurred. The proof was not clear on the question as to whether Killon was actually on the bus at the time he claimed to have been. It seems to us that this is a matter easily susceptible of convincing proof, one way or the other. Since the judgment is to be reversed on another ground we shall not undertake to determine the question of the alleged error in the court's refusal to sustain the motion for peremptory, as the evidence may be different on another trial.

The objection to the instructions is confined to No. 1 as given by the court and to the use of the words "to give proper notice by the horn on said truck in approaching pedestrians, etc." The argument is that a warning

instruction should not have been given, "since Estes stated that he sounded his horn, and there is no evidence in the case that he did not sound his horn, except the Killons who were not there." This based on appellant's assumption that the Killons were not on the bus at the time of the injury. This we do not determine, but as the proof was presented was a matter for the jury's consideration. Upon inspection of some of the proof offered by appellee, we find one or more witnesses who say they did not hear a sound of the horn.

The particular wording of the instruction may better conform to the sound signal requirements by following the form in this respect in Stanley on Instructions, form No. 102, using the words "to give when necessary, timely notice of the approach of said automobile by sounding the horn." The language of the statute, after requirement of horn or other signaling device, is, "shall sound the horn or sound device whenever necessary as a warning of the approach of such vehicle to pedestrians." KRS 189.080. Ordinarily the question of necessity of the sound signal is one for the jury. McCray v. Earles, 267 Ky. 89, 101 S. W. 2d 192; Gilbert's Adm'r v. Allen, 264 Ky. 202, 94 S. W. 2d 341.

The final contention is that the attorney for appellee went so far afield in his argument to the jury in stating facts not shown by the record and otherwise, as to require a reversal, and we have concluded that this contention must be upheld, particularly so when the whole case presented is a very close one. The bill of exceptions shows that during the argument counsel said that appellant had two ribs broken, and that the X-ray picture showed that he had ribs broken. The defendants objected and excepted on the ground that there was no evidence that Mr. Doepel had suffered a fracture of ribs, and further that there had been no introduction of any X-ray pictures. The bill of exceptions stated (notwithstanding appellee's counsel by affidavit made denial) that the court sustained the objection, but "notwithstanding this plaintiff's attorney continued to argue this to the jury." (Note: This assertion is made in the bill to all other alleged improper statements to follow.)

As we read the record we find no specific evidence that appellee suffered a fracture of the ribs. Three doctors examined him but none testified. The reference by

counsel to the failure of defendants to introduce the doctor or doctors was obviously unfair. In the usual run of cases it is customary for the plaintiff to introduce attending doctors in order to establish the extent of injuries and impairment to earning power. It was not incumbent on defendants to build up this feature of plaintiff's case. It may have been as incumbent on plaintiff to introduce the bus driver as it was on defendants, though there is nothing in the record to show that the bus driver saw appellee. That he did see the approaching truck and rather anticipated a head-on collision is evidenced by his remark, ''brace yourselves.'' There is no explanation as to why a doctor and bus driver were not called. The general rule is that the unexplained failure of a party to produce a witness under certain circumstances is a fit subject for fair comment and may justify an inference unfavorable to the party in default, but this was written in a case where it was reasonably presumed that an agent of a principal who was in the courtroom and was not called, might have enlightened the court on a disputed question of agency. Monohan v. Grayson County Supply Co., 245 Ky. 781, 54 S. W. 2d 311. The rule would hardly apply here. In Helton v. Prater's Adm'r, 272 Ky. 574, 114 S. W. 2d 1120, we suggested the rule above stated, but held it error to comment on the defendant's failure to introduce any witness, when nothing in the record showed that a witness possessing knowledge of any material facts not proven was not introduced.

We think the reference to the failure of defendants to call the doctor was to say the least unfair and prejudicial. The reference to the failure to call the bus driver while not precisely fair was not prejudicial. The argument as to the broken ribs and what the X-ray pictures showed, or that they did show broken ribs was not borne out by any competent testimony in the case. If appellee's rib or ribs had been broken, he must have known the fact; if he did not then the attending physician could enlighten the court on the subject. On another trial these matters may, if counsel think it necessary, be easily cleared up. However, we are reversing mainly on the ground that after the court had sustained defendants' objections first to incompetent questions and then to the argument, as shown by the bill of exceptions, counsel nevertheless continued the same line of argument. Coun-

sel no doubt is thoroughly familiar with the general rule of procedure that it is the duty of counsel in argument to restrict himself to record facts, resorting only to fair and reasonable deductions and inferences.

Judgment reversed with directions to grant appellants a new trial. Any and all other questions discussed in briefs are reserved.