## Halbert v. Lange.

October 13, 1950.

William H. Field, Judge.

Brent C. Overstreet for appellant.

Davis, Boehl, Viser & Marcus for appellee.

JUDGE LATIMER—Affirming.

Appellant brought this personal injury action against appellee seeking recovery for injuries sustained when struck by appellee's automobile.

Upon trial of the cause the jury returnred verdict in favor of appellee, defendant below. Appellant is here seeking reversal of that judgment. She assigns as errors (1) the trial court's refusal peremptorily to find for the plaintiff at the close of all the proof in the

case; (2) the verdict is contrary to law and evidence; and (3) the court erred in its instructions to the jury.

Contention (1) above seems to be predicated upon the theory that appellee's deposition, taken as if upon cross-examination, and introduced at the trial as substantive evidence in behalf of plaintiff below, wherein defendant admittedly was negligent, binds him and consequently bars him disputing that testimony.

Appellant, a lady 46 years of age, together with a lady friend, was proceeding northwardly on Brook Street toward Magnolia in Louisville apparently for the purpose of going to the business district of the city. They were proceeding on the east side of Brook Street, when at a point about the middle of the block, they started to cross the street to a cab parked on the west side. Appellant testified that, on starting across the street, she looked in both directions and saw no traffic coming either way; that she then started across the street and had reached the west lane of traffic when appellee, who was proceeding southwardly on Brook Street, struck her. She testified that appellee at no time blew his horn or gave her any warning whatsoever. She further stated that she at no time before she was struck saw any lights on appellee's car, although it was getting dark. She is corroborated in these statements by her friend, Mrs. Essie Johnson.

The deposition of appellee, which was taken as if upon cross-examination, was then introduced by appellant. His version of the accident, as reflected by this deposition, is substantially, that when he first saw appellant she was 75 feet away; that she seemed to be walking rather fast; that he was driving about 25 or 30 miles per hour; and that after he first saw her "she walked until it looked like she got to the middle of the street and I thought she stopped until the time I got there, then she took another step out in front of me." When asked if he stopped his car, he said: "No, sir, I just kept going like I was. I thought she was waiting for me to go by." He said that he never did bring his car to a stop and that he didn't blow his horn. He was asked why he didn't blow his horn when he saw her in the street. He answered: "I thought she could see me. Surely I didn't think she was going to walk out in front of me." He further stated that when he first saw her

he began slowing down but never did bring his car to a stop.

Appellee, testifying at the trial, modified this version of the story somewhat, saying that he possibly was mistaken as to the distance when he first saw appellant; that it was probably 50 feet; and that he did all he could to stop his car. There is some apparent conflict in the story told by appellant as given in his deposition and that told upon direct examination in the trial.

Numerous witnesses testified in the case. This testimony had to do somewhat with the manner in which appellant approached the street; the point from which she approached the street; and facts relative to appellee's driving and control of his car, all of which were facts surrounding the accident with bearing on the negligence of the parties.

Appellant contends that the testimony given as upon cross-examination before the trial differs materially from that he undertook to and did give on the witness stand at the trial. Appellant insists that appellee is bound by his former testimony. Sutherland v. Davis, 286 Ky. 743, 151 S.W.2d 1021, deals exhaustively with the questions of admissions and the extent to which a party may be bound by his own testimony, differentiating therein quasi admissions and judicial admissions. It is shown therein that a judicial admission is conclusive since it removes the proposition in question from the field of disputed issue.

In 50 A.L.R. page 980, it is said: "An examination of the decisions reveals that when a party testifies to positive and definite facts which, if true, would defeat his right to recover or conclusively show his liability, and such statements are not subsequently modified or explained by him so as to show that he was mistaken although testifying in good faith, it has generally been held that he is conclusively bound by his own testimony, and cannot successfully complain if he is nonsuited or the court directs a verdict against him." See also annotated cases at page indicated above.

Thus, it will be observed that admissions will be conclusive only as long as they are allowed to stand. This conclusiveness, however, is destroyed if and when the party corrects his statements, explains them, or in-

troduces other testimony showing that he could have been mistaken as to the facts.

It appears difficult to lay down an ironclad or entirely satisfactory rule. The true test seems to be whether the party's testimony is merely a narrative of events observed or participated in, wherein there is always present the obvious possibility that he, like any other witness, could be mistaken, or whether he was testifying to facts peculiarly within his own knowledge. See Harlow v. LaClair, 82 N. H. 506, 136 A. 128, 50 A.L.R. 973. This can be observed by taking into consideration all the conditions and circumstances proven in the case. The correct and generally accepted rule seems to be that laid down in the Sutherland case, above cited by appellant: "We believe the law to be that admissions fatal to his cause given in the testimony of a party to an action on the trial of the case should be viewed in the light of all the conditions and circumstances proven in the case; and unless all such circumstances and conditions give rise to the probability of error in the party's own testimony, he should not be permitted to avert the consequences of his testimony by the introduction of, or reliance on, other evidence in the case." (286 Ky. 743, 151 S.W.2d 1025.)

It is next contended that the admitted failure to sound the horn was negligence per se, and that appellant was entitled, on the basis of this negligence, to a directed verdict. In support of that position, appellant cites a number of cases. Best's Adm'r v. Adams, 234 Ky. 702, 28 S.W.2d 484; United Casket Co. v. Reeves, 206 Ky. 581, 267 S.W. 1108; Ratterman et al. v. Cleveland, 309 Ky. 435, 217 S.W.2d 978; Rabold v. Gonyer, 285 Ky. 618, 148 S.W.2d 728; Trainor's Adm'r v. Keller, 257 Ky. 840, 79 S.W.2d 232; Droppelman v. Willingham, 293 Ky. 614, 169 S.W.2d 811. However, it will be noted that those cases present situations differing considerably from those in this case. The peril of the pedestrian was apprehended a sufficient time before the collision, and under such circumstances as to make that question one of law for the court. Here we have conflicting testimony as to opportunity and time within which appellee could apprehend the peril of the pedestrian, coupled with the testimony of appellee that he believed appellant was stopping for him to go by and that he didn't believe she would step on out in front of his car.

KRS 189.570 provides that motorist shall give warning by sounding the horn when necessary. Whether or not the sounding of horn is necessary is ordinarily a question for the jury. Fork Ridge Bus Line v. Matthews, 248 Ky. 419, 58 S.W.2d 615; Kelly v. Marshall's Administrator, 274 Ky. 666, 120 S.W.2d 142; Chappell v. Doepel, 301 Ky. 622, 192 S.W.2d 809. We think the court properly refused a peremptory instruction on that point.

The question as to whether or not appellee could have, by ordinary care, avoided injuring appellant after seeing her in position of peril was properly submitted to the jury. Appellee stated that he did everything he could to avoid the accident; that he did not sound his horn because he thought appellant was going to stop and let him pass; that he applied his brakes but that his car was still in motion and he ran into her and hit her. A number of appellee's witnesses testified that there was only a short interval between the time they first saw her in a position of peril to the time she was struck by appellee. It will be noted that in Instruction No. 2, the court properly submitted that question to the jury.

"No. 2. Lange had the right of way through Brook Street. Mrs. Halbert, undertaking to cross the street under the circumstances, placed herself in a situation of peril from traffic, including the car of Lange, on Brook Street. You will, therefore, find for the defendant, Lange, unless you believe from the evidence that Lange saw, or could have seen, the position of peril of Mrs. Halbert in time to have, by the exercise of ordinary care and the use of the means at his command, have avoided the collision with her by stopping his car, checking his speed, diverting its course, or sounding his horn, in which event you should find for the plaintiff, Mrs. Halbert."

It is lastly contended that the verdict of the jury was contrary to the law and evidence. Reviewing the testimony we note that appellant and her friend stated they looked both ways and saw no traffic coming from either direction, and that they did not see any parked cars. Other witnesses stated that they saw cars, both parked and moving. This evidence, coupled with other

654

evidence heretofore indicated, obviously shows this contention to be without merit.

We think the court clearly right in refusing the peremptory instruction and submitting the issues of fact to the jury.

The judgment is affirmed.