**Hester HEAD et al., Appellants,**

**v.**

**Alberta RUSSELL et al., Appellees.**

**Leroy POWERS, Appellant,**

**v.**

**Alberta RUSSELL et al., Appellees.**

**Leroy POWERS, Appellant,**

**v.**

**Hester HEAD et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 22, 1957.

J. L. Richardson, Jr., J. L. Richardson, III, Louisville, for appellants Hester Head and Carolyn Powers.

J. Walter Clements, Louisville, for appellant Leroy Powers.

Peter, Heyburn & Marshall, Gavin H. Cochran, Louisville, for appellees Alberta Russell and Dennis Russell.

James H. Frazee, Louisville, for appellee Leroy Powers.

CAMMACK, Judge.

This action was instituted by the appellants, Hester Head and Carolyn Powers, against the appellees, Alberta Russell, Dennis Russell and Leroy Powers, to recover damages for personal injuries arising out of an automobile collision. Mr. Powers filed a cross-claim against the Russells to recover for personal injuries and for damages to his car. The collision occurred when a car owned and driven by Leroy Powers collided at an unmarked intersection in Louisville with a car driven by Alberta Russell and owned by her husband, Dennis Russell. Mrs. Head and Mrs. Powers were passengers in the car driven by the latter's husband, Leroy. Mr. Russell was not with his wife, but was joined as a defendant under the "family purpose" doctrine.

Mrs. Head was awarded $2,000 against Leroy Powers and Mr. and Mrs. Russell. Mrs. Powers was awarded $350 against the same parties. Leroy Powers was awarded nothing on his cross-claim against the Russells. Mrs. Head and Mrs. Powers are appealing from their awards because they contend they were inadequate and because the alleged misconduct of one of the jurors on voir dire made the verdict illegal. On his appeal Mr. Powers is contending that he should not have been found negligent and that he was entitled to recover on his cross-claim against the Russells; thus he appears herein both as an appellant and an appellee.

The collision occurred at the intersection of Camden and Woodruff Streets between 9:20 and 9:30 a. m. on June 25, 1955. Mr. Powers was driving north on Woodruff, taking his wife and Mrs. Head to the place of their employment, an A. & P. store which, according to Mrs. Head, was 10 or 12 blocks from the place of the collision. The ladies, who were checkers, were due at work at 9:30. Mrs. Russell was driving west on Camden and thus approached the intersection from the right as regards the Powers car. There is some confusion in Mrs. Russell's statements concerning the distance of the two cars from the intersection when she first noticed the Powers car, but we gather from her testimony that her car was closer to it by about seven car lengths. She said she was about a car length from the intersection at that time and that she next saw the Powers car when it was about two feet in front of her. She claims to have slowed from her previous speed of 20 miles per hour as she entered the intersection.

We take up first the question of Powers' negligence. Mr. Powers said he slowed down and shifted gears before he entered the intersection and that as he did not see any car approaching he accelerated his speed. No one in the Powers car saw the Russell car until the instant before it struck the Powers vehicle. At that time Mrs. Powers, who was riding between her husband and Mrs. Head on the front seat, cried out, thereby calling attention to it. Mr. Powers swerved his car to the left in an unsuccessful effort to get out of the path of the Russell car. 1. either driver sounded a horn. The Russell car struck the Powers car slightly to the rear of center on its right side and all three occupants of the latter car were injured.

■ We do not believe that Mr. Powers was entitled to a directed verdict in the action instituted by Mrs. Powers and Mrs. Head. Mrs. Russell testified that he was going fast, and although Mrs. Powers and Mrs. Head both said he had proper control of his car, there was some conflict in the testimony of Mrs. Head as to whether he looked both ways before entering the intersection. Obviously, he did not see the Russell car until the instant before the crash when Mrs. Powers called his attention to it. At that time Mr. Powers had accelerated his speed across the intersection and it is quite possible that his thoughts were occupied with getting his passengers to their employment by 9:30. We do not think the statements of Mrs. Head and Mrs. Powers should be construed as judicial admissions of no negligence on the part of Mr. Powers, since they do not establish unequivocally that the sole cause of the accident was the negligence of another as was required in Bell v. Harmon, Ky., 284 S.W.2d 812. See also 31 C.J.S. Evidence § 381d. The facts and circumstances revealed by these witnesses as well as by others were sufficient to raise a question for the jury.

■ When two cars reach an unmarked intersection at the same time the operator of the vehicle on the left must yield the right of way to the vehicle approaching from his right. KRS 189.330(2). Mrs. Russell's car approached the intersection from the right and she stated that she thought the Powers car was far enough away to allow her to proceed across it safely. The testimony concerning the questions of speed of the two vehicles and the respective times at which they entered the intersection were sufficiently conflicting to necessitate their submission to the jury.

We turn now to the question of the adequacy of the damages awarded Mrs. Head and Mrs. Powers. Mrs. Head, who was sitting next to the right front door of Powers' car, received the most serious injuries. She was hospitalized for about six days. At the time of the trial she was still partially incapacitated, wore a back brace and had pains in her back and side. However, the medical testimony was conflicting as to whether her condition resulted from the accident or was due to a pre-existing kidney ailment. The medical testimony was

conflicting also as to whether either Mrs. Head or Mrs. Powers had any permanent injuries as a result of the collision. One witness, Dr. K. Armand Fischer, testified that both ladies had permanent injuries which, in his opinion, resulted from the accident.

After the deduction of medical expenses and lost time the award for Mrs. Head left $682.48 for pain and suffering and the award for Mrs. Powers left $228.48 for pain and suffering. The case of Droppelman v. Willingham, 293 Ky. 614, 169 S.W.2d 811, relied on by Mrs. Head and Mrs. Powers, reveals facts dissimilar to those in the case at hand. There it was definitely established that the pain and suffering of the injured party resulted from the accident complained of. Such was not the case here.

We believe the awards of $350 to Mrs. Powers and $2,000 to Mrs. Head were not so grossly inadequate as to shock the conscience, or to appear to be the result of passion and prejudice, in light of the medical proof before the jury. The jury could have believed that the injuries suffered by the ladies were the minimum injuries described in the conflicting medical testimony. It was for the jury to determine what weight, if any, should be given to each doctor's description of the injuries. We still adhere to our reluctance to substitute our own views on a question of the adequacy or inadequacy of an award for those of a jury without what we consider legal cause. Wilkins v. Hopkins, 278 Ky. 280, 128 S.W. 2d 772; Blincoe v. Drury, 311 Ky. 613, 224 S.W.2d 936, 16 A.L.R.2d 390.

On the voir dire one of the jurors failed to disclose that Dr. Fischer was a medical witness against her some six years before in a case in which she was involved and in which she came out successfully. This juror did disclose on the voir dire that her son had been involved in an automobile accident case and that she thought that Mr. Powers' attorney represented her in that suit. Mr. Powers' attorney did not remember this client and, according to the brief filed by counsel for Mrs. Head and Mrs. Powers, this juror, after the verdict was returned, correctly remembered the attorney who represented her and it was not Mr. Powers' attorney.

The question to which this juror failed to respond was, "Has anybody on the panel ever been a patient of or who knows * * Dr. K. Armand Fischer?" There is no assertion that this juror had ever been a patient of Dr. Fischer or that she had come in contact with him other than having seen him as a witness against her six years or more before.

We do not believe it was unusual for the juror to fail to remember the name of Dr. Fischer. Individual memories vary and this juror demonstrated an inability to remember names and faces through her improper association of an attorney in this suit with an attorney who represented her in a previous suit. We believe this juror in good faith disclosed all of the pertinent information regarding the suit in which she was involved which might have led to the exercise of a peremptory challenge.

There remains the question of Mr. Powers' appeal against the Russells. Mrs. Russell was fined in Police Court upon a charge of failure to yield the right of way growing out of the accident involved herein. Mr. Powers argues that the record of this conviction, which the trial judge excluded, was admissible and together with other evidence was sufficient to entitle him to a directed verdict on his cross-claim against the Russells. Assuming its admissibility, this evidence could only tend to establish negligence on the part of Mrs. Russell and would not show lack of negligence on the part of Mr. Powers. The jury found that Mrs. Russell was negligent, so even if the evidence were admissible its exclusion was not prejudicial.

On the whole case we think the judgment should be and it is affirmed.