**Robert ELPERS, Appellant,**

v.

**Edward L. KIMBEL et al., Appellees.**

**Catherine M. JOHNSON et al., Appellants,**

v.

**Edward L. KIMBEL et al., Appellees.**

Court of Appeals of Kentucky.

March 22, 1963.

J. L. Richardson, Jr., Charles Morris Leibson, Louisville, for Robert Elpers.

C. M. Leibson, Goldstein & Leibson, Louisville, for Catherine M. Johnson, and others.

J. Walter Clements, J. L. Richardson, Jr., Louisville, for appellees.

STANLEY, Commissioner.

Multiple actions and cross-actions arose out of an intersection automobile collision at Goss and Texas Avenues in Louisville on July 31, 1959. The appeals present several legal problems.

Robert Elpers was driving south on Goss Avenue and Edward L. Kimbel, who had been driving north on the same street, was in the act of making a left turn westwardly on Texas Avenue when the cars collided in the southwest quarter of the intersection. Both drivers and their guests were injured. On the joint trial of the respective actions and cross-actions, the jury expressly found both drivers to have been negligent and

denied them damages, one against the other. Verdicts for each of Elpers' three guests were returned against both drivers, the awards being apportioned 9/10 against Elpers and 1/10 against Kimbel. But the court entered judgment *non obstante veredicto*, denying two of those guests damages against Elpers, as hereinafter described. The verdict awarded Kimbel's guest, Miss Sandra Webb, $3,000, and the owner of the car, Mrs. Martha Kimbel, $250 for damages to it, against Elpers alone.

We have two appeals: (1) Elpers, appellant, against Kimbel, Sandra Webb (who has since married Kimbel) and Anna Mary Herbold, appellees; and (2) Catherine M. Johnson and Marie Elpers, appellants, against Kimbel and Elpers, appellees. The appeals have been consolidated. Kimbel has not appealed from the judgments against him, nor Elpers from Mrs. Kimbel's small judgment.

## ELPERS V. KIMBEL ET AL.

Elpers contends that the court should have directed a verdict in his favor as Kimbel was solely responsible for the accident. He maintains that the adverse evidence was only that he had been driving at an excessive speed (contrary to his own evidence), but, even so, that speed was not a proximate cause. This would, of course, result in directing a verdict for damages in his favor against Kimbel and denying verdicts and judgments for all other parties against him.

Contingent upon the event this court decides that basic claim against him, Elpers contends (1) the court should have granted him judgment n. o. v., relieving him from the award of Mrs. Anna Mary Herbold, as he did from the awards of Elpers' other two guests, Mrs. Johnson and Mrs. Elpers, on the ground that they had made judicial admissions barring their claims of negligence on Elpers' part. He contends (2) the trial court erred in the first place in authorizing the jury to apportion any damages they might award Mrs. Herbold, and, in the second place, that the court should have adjudged that the recovery against Kimbel should be for one-half instead of one-tenth of the jury's award to Mrs. Herbold.

### I.

Goss Avenue inclines three or four degrees downward from a point 200 to 250 feet to the Texas Avenue intersection, so that cars coming from the north (as was Elpers) are not clearly or fully visible until after they get over the crest.

Kimbel testified, in brief summary, that he approached the intersection at 20 or 30 mph, had the green light, switched on his lefthand flasher turning signal lights when about 100 feet from the intersection, slowed down, looked ahead up the hill and did not see any car coming down Goss Avenue. He started to turn on Texas Avenue, and when he was about one-third of the way into the opposite lane (or under the traffic light, as he stated elsewhere) he saw Elpers' car coming down the hill at what he estimated to be 60 mph as it got close to him. In that instant he realized he could not go ahead without being struck and stopped his car still. The brakes on the other car were "squealing" as it ran into the front side of his automobile.

Kimbel's testimony is substantiated fully by Sandra Webb, his guest, and is substantiated in part by two young men who were at a gasoline service station on the southwest corner of the intersection. They too testified as to the rate of speed of Elpers' car.

Police officers testified there were skid marks 45 or 50 feet long made by Elpers' car. They described the location of the debris in the intersection. The maximum speed limit for the zone was 35 mph.

Robert Elpers' testimony was that as he came over the crest of the hill on Goss Avenue the traffic light turned green; he was going approximately 30 mph; he saw Kimbel's car coming, and it gave no signal of an intention to turn. At the moment

Kimbel's car started to turn left in front of him, he, Elpers, applied his brakes "in full force," but the Kimbel car continued on without stopping, and when it was about one-third of the way across the center line of the street, it struck the left front side of Elpers' car.

The above is a broad outline of the testimony. All of the witnesses used an enlarged (27" x 36") aerial photograph of the street intersection in pointing out and describing the many locations about which they were testifying. Every one of them made marks of identification on the picture. It has been brought up with the record, but the marks are so numerous and confusing that the testimony is as incomprehensible as if they had not been made. Also, miniature car models were used by the witnesses to exemplify their testimony. Of course, that demonstrative evidence is not portrayed in the record.

We cannot accede to the appellant's argument that the only evidence tending to prove negligence on his part was that of excessive speed, and that it cannot be regarded as either a proximate or contributing cause of the accident or that it proves Kimbel was solely negligent.

In the case of Brown v. Crumpton, Ky., 252 S.W.2d 670, relied on, the only question was which of meeting automobiles was on the wrong side of the road. In other cases, such as Rabold v. Gonyer, 285 Ky. 618, 148 S.W.2d 728, 730, and Davis v. Kunkle, 302 Ky. 258, 194 S.W.2d 513, only one reasonable conclusion could be drawn, namely, one car had, in fact, turned suddenly in front of the other. There were no other factors. In the instant case the court initially, and the jury finally, could reasonably conclude from all the evidence (1) that Elpers saw the Kimbel car making the turn and had he been driving at a lawful rate of speed, he could have brought his car to a stop instead of skidding 45 or 50 feet to the point of the collision; or (2) that he could have swerved and avoided the collision. As in Pillsbury-Ballard, Division of

Pillsbury Mills v. Scott, Ky., 283 S.W.2d 387 (to cite only one case), speed could well be regarded as a proximate or contributing cause of this accident.

In exercising the province of an appellate court to determine whether there was sufficient evidence to submit the questions of negligence and proximate cause to a jury, we recognize that the trial court heard the oral testimony and had full opportunity to observe the demeanor of the witnesses. We are of opinion it was proper to submit the case to the jury and that the verdicts for the guests in both automobiles are sustained by the evidence.

## II.

With respect to the argument that the court should have ruled that Mrs. Herbold had made judicial admissions that the appellant, Elpers, was not negligent, which barred her from recovering damages of him, we deem it enough to say here that her testimony to that effect was weaker than that of the other two guests because of her inattention and the unsubstantialness of her statements as proof. The applicable law of judicial admissions is discussed in considering the appeal of Mrs. Johnson and Mrs. Elpers following.

## III.

As related, a verdict was returned against Elpers alone for $3,000 in favor of Sandra L. Webb and $250 in favor of Mrs. Martha Kimbel, the owner of the car driven by her son, Edward. Judgment was rendered for Elpers against Kimbel for one-half of those verdicts as being contribution. KRS 412.-030; Brown Hotel Co. v. Pittsburgh Fuel Co., 311 Ky. 396, 224 S.W.2d 165. That part of the judgment is not questioned. But Elpers vigorously contends he was entitled to similar contribution of one-half against Kimbel for portions of the verdict against him in favor of Mrs. Herbold for $4,500. It may be again noted that the jury also awarded her $500 against Kimbel. The verdicts were under an instruction that if

the jury found both drivers negligent, they might award their guests a "sum in gross" against both defendants or "award them a separate and different amount against each."

Since we are reversing the judgment n. o. v. denying Elpers' other two passengers judgment against him, his argument concerning apportionment of Mrs. Herbold's judgment becomes applicable to those cases.

 In the law of negligence, "contribution" connotes a share in causation. Ballentine's Law Dictionary. The right of contribution of one tortfeasor against his co-wrongdoer is statutory. KRS 412.030. We have recognized that the right exists where there was concurring or combined negligence causing the same injury. Consolidated Coach Corp. v. Burge, 245 Ky. 631, 54 S.W.2d 16, 85 A.L.R. 1086. Under present procedure (though not formerly) the right may be asserted in the same action by a cross-claim. Clay, CR 13.07, Comment 3; 14.01, Comment 2. Cf. Brown Hotel Co. v. Pittsburgh Fuel Co., 311 Ky. 396, 224 S.W.2d 165, a suit for indemnity.

 The question we have here is the measure and apportionment of contribution in all the cases. Ordinarily, if one of two tortfeasors is forced to discharge the entire liability, he may recover one-half of the reasonable amount paid. Consolidated Coach Corp. v. Burge, supra; Southeastern Greyhound Lines v. Myers, 288 Ky. 337, 156 S.W.2d 161, 138 A.L.R. 1461; 13 Am.Jur., Contribution, § 57. In the present case, as stated, that right of Elpers to recover one-half of the judgment in favor of Sandra Webb was recognized and enforced.

## IV.

We come to the apportionment of the verdicts for the appellant's three passengers.

 Our statute, KRS 412.030 (originally enacted in 1926), which abrogated the common law rule, gives the right of contribution among joint tortfeasors or parties in *pari delicto* where the wrong involves no moral turpitude. A corollary statute, KRS 454.040 (originally enacted in 1839) provides that in actions of trespass the jury may assess joint or several damages against the defendants. This statute has long been construed as applying to all actions of trespass of whatsoever kind, including that upon the person. Central Passenger Ry. Co. v. Kuhn, 86 Ky. 578, 6 S.W. 441, 9 K.L. R. 725, 9 Am.St.R. 309. Among later cases are Saad v. Brown, 144 Ky. 178, 137 S.W. 834, 35 L.R.A.,N.S., 1165; McCulloch's Adm'r v. Abell's Adm'r, 272 Ky. 756, 115 S.W.2d 386; Brown Hotel Co. v. Pittsburgh Fuel Co., 311 Ky. 396, 224 S.W.2d 165; Murphy v. Taxicabs of Louisville, Inc., Ky., 330 S.W.2d 395.[1]

 The statute has also been consistently construed as authorizing a verdict in such proportions as the participation of the respective defendants in the tortious act may justify. The verdict is conclusive, and the trial court properly ruled Elpers not to be entitled to recover one-half the damages assessed against him in the Herbold case.

## JOHNSON ET AL. V. KIMBEL ET AL.

As related, Elpers' passengers were Mrs. Marie Elpers, his mother; Mrs. Catherine Johnson, his aunt; and Mrs. Anna Mary Herbold, his greataunt. All of them instituted actions against both Elpers and Kimbel for personal injuries. The verdict for Mrs. Johnson and Mrs. Elpers each was $2,700 against Elpers and $300 against Kimbel. The verdict for Mrs. Herbold was $4,500 against Elpers and $500 against Kimbel. But, as stated in the foregoing opinion, judgments n. o. v. set aside the verdicts for Mrs. Johnson and Mrs. Elpers

1. The rule is not applicable in cases of master and servant, since liability of the master is derivative. Baldwin v. Wiggins,

Ky., 289 S.W.2d 729; Daniel v. Patrick, Ky., 333 S.W.2d 504.

and denied them recovery of Elpers on the ground that they had made "judicial admissions." They appeal.

Mrs. Elpers was riding on the front seat, and the other ladies were in the rear. They were on the way to a birthday party for Mrs. Elpers' mother, and as they approached the intersection of Texas Avenue, Mrs. Elpers and Mrs. Johnson were engaged in conversation, and, apparently, were paying no attention to the way the car was being driven. Mrs. Herbold, just before the accident, was looking out the car window "trying to locate a friend's house" on Goss Avenue.

Mrs. Elpers had turned and handed Mrs. Johnson a paper, and as she again faced forward (when "probably entering the intersection"), she saw the Kimbel car turning in front of them and heard the screech of the brakes, and then came the crash.

On direct examination Mrs. Elpers stated she had not noticed her son speeding or doing anything reckless in driving the car. On cross-examination she testified that he had been driving normally and slowly. She estimated his speed at 25 or 26 mph. She had seldom ridden with anyone but her son, and her judgment as to speed was based upon the way he usually drove. In answer to a leading question, if at the time she had seen her son do anything that "contributed to the happening of the accident, so far as you could see?," she answered, "No, sir." In the same way she stated she had not seen or noticed anything unusual about the way he was driving.

Mrs. Herbold testified she had not noticed any recklessness or speeding by the driver that made her afraid. On further cross-examination she testified she had not been watching the driver, but she knew he was not going fast, and she did not know of anything he had done that she thought improper. She insisted she was "not a good judge of speed," but she knew when "somebody is going fast."

Mrs. Johnson "judged" or "believed" her nephew had been driving "28 mph" during the whole trip, and said he had done nothing to make her afraid for her safety. During the course of her cross-examination she answered leading questions that he appeared "to have his car under reasonable control and to be driving normally." Her qualification for judging speed was that she usually rode with her boss and watched his speedometer. She was looking ahead when she heard the brakes squealing. She saw some cars in front in the same lane going in the same direction, but she did not see the Kimbel car before or as it was turning.

This and other courts have sometimes inaccurately called "judicial admissions" testimony of a party adverse to his claims when it would have been more accurate to designate the testimony as binding admissions against interest or favorable to the opposing party, although there may be formal admissions or positive testimony of a character that come within the term. Sutherland v. Davis, 286 Ky. 743, 151 S.W.2d 1021; Fannon v. Hensley, Ky., 320 S.W.2d 614; Schoenbaechler v. Louisville Taxicab & Transfer Co., Ky., 328 S.W.2d 514; Annotation, "Binding effect of party's own unfavorable testimony," 169 A.L.R. 798. The Annotation reveals diversity of opinion as to whether a party having made adverse admissions may rely on other evidence more favorable to his cause or defense.

In Sutherland v. Davis, supra, and City of Lexington v. Clarke, 290 Ky. 290, 160 S. W.2d 653, we held that if the circumstances and conditions give rise to the probability of error in the party's adverse admissions, he may not be bound by them as a matter of law; otherwise, they are binding upon him, and he cannot avert the consequences thereof.

In Halbert v. Lange, 313 Ky. 648, 233 S.W.2d 278, a defendant had testified in a pretrial deposition to facts indicating his own negligence. The plaintiff introduced it on the trial. The defendant, on the trial,

modified or qualified that testimony. We held the statements in the deposition not binding on the defendant, stating that they must be considered together with his testimony on the trial. Thompson v. Marcum, Ky., 249 S.W.2d 139, is to the same effect.

In the City of Lexington case, supra, plaintiff's statement relied on as a judicial admission was "purely a matter of estimation or guesswork on his part and the probability of error in his testimony is easily recognizable." We held plaintiff was entitled to rely on other testimony supporting his case. In the Sutherland case, supra, the plaintiff's admissions, held to have barred recovery, were clear and positive, and they stood alone. The admissions in Bell v. Harmon, Ky., 284 S.W.2d 812, were of like character in that the party was in a position to observe and did observe what he deliberately testified.

In the more recent case of Zipperle v. Welsh, Ky., 352 S.W.2d 556, the plaintiffs were guests in one of the defendants' automobiles which collided with the other's car at a street intersection. The only issue presented was which driver ran a red light. The plaintiffs testified they had no specific complaint respecting their host's operation of the car which might have caused the accident. We affirmed a judgment n. o. v. for the defendant on the ground that plaintiffs had made judicial admission that he was not negligent.

In Halbert v. Lange, supra, 313 Ky. 648, 233 S.W.2d 278, in the course of the opinion, discussing judicial admissions, we observed:

"It appears difficult to lay down an ironclad or entirely satisfactory rule. The true test seems to be whether the party's testimony is merely a narrative of events observed or participated in, wherein there is always present the obvious possibility that he, like any other witness, could be mistaken, or whether he was testifying to facts peculiarly within his own knowledge. See Harlow v. LeClair, 82 N.H. 506,

136 A. 128, 50 A.L.R. 973. This can be observed by taking into consideration all the conditions and circumstances proven in the case."

And in Bell v. Harmon, Ky., 284 S.W.2d 812, we made this comment with reference to the inconclusive nature of judicial admissions:

"The rule should be applied with caution because of the variable nature of testimony and because of the ever-present possibility of honest mistake. A judicial admission of this kind should in essence contain the elements of waiver. See Alamo v. Del Rosario, 69 App.D.C. 47, 98 F.2d 328. It is in some respects similar to an election of causes of action. See Rowe v. Shepherd, Ky., 283 S.W.2d 188."

Our decisions are in accord with Wigmore's rationale. The eminent author on evidence questions, for given reasons, the conclusive nature of a party's testimony as a judicial admission. IX, Wigmore on Evidence, § 2594a, p. 597. He says, p. 601:

"In the first place, the proposed rule is not a simple rule of thumb, but a flexible one, requiring especial judicial wisdom for its sound application. Therefore, while seeking justice, it might often do injustice. In the second place, it affords one more ground for an appeal on a question of law, and thus one more element of delay and technical disputation. In the third place, its purpose can usually be as well attained by a ruling upon the insufficiency of evidence for the jury (ante, § 2494). In the fourth place, and chiefly, it assimilates testimony on the stand to formal deliberate admissions. But testimony cannot be treated that way. Testimony in court is an elusive matter of mental operations. It is the culmination of much talk and reflection and memory-stirring between all concerned. It is full of surprises at the trial. The truth of the case depends on a comparison of what all the witnesses

say and all the circumstances indicate. A rule which binds a party to a particular statement uttered on thé stand becomes an artificial rule. It is out of place in dealing with testimony. Let the judge test each case by itself."

We look to the application of the law to the case at bar.

■ The testimony of these elderly ladies throughout their several vigorous cross-examinations reveals a natural purpose not to blame their son and nephew. Yet, it is to be noted that in the main they expressed only broad legal conclusions that he was operating his car properly, and opinions as to speed without having proper qualifications to judge the rate. The testimony, as that in City of Lexington v. Clarke, supra, 290 Ky. 290, 160 S.W.2d 653, was "purely a matter of estimation or guesswork." In Head v. Russell, Ky., 307 S.W.2d 557, a case much like the present, similar testimony of two lady guests in an automobile involved in an intersection collision was likewise regarded as not constituting judicial admissions of no negligence on the part of their host, whom they were suing. We so held "since they do not establish unequivocally that the sole cause of the accident was the negligence of another as was required in Bell v. Harmon, Ky., 284 S.W.2d 812. See also 31 C.J.S. Evidence § 381d. The facts and circumstances revealed by these witnesses as well as by others were sufficient to raise a question for the jury."

In the instant case, we think the "admissions" were of a character that entitled the plaintiffs to the benefit of other and more definite testimony concerning the excessive speed of the driver of the car, Elpers, and the reasonable inference, among other things, that he did not have it under control under the circumstances. The trial court was in error in holding these were fatal judicial admissions.

Moreover, as we have observed, there was another prime factor which could well be deemed negligence on the driver's part,

namely, his failure to avoid the collision by going around Kimbel's car. If it was moving, he might have gone behind it. If it had stopped, he could have gone either in front or behind it. The plaintiffs did not undertake to testify concerning that factor.

We are of opinion that the judgment n. o. v. in favor of the defendant was error. The judgment is accordingly reversed with directions to enter another according to the verdicts.

The judgment in Elpers v. Kimbel is affirmed.

The judgment in Johnson v. Kimbel is reversed.