264

James F. FLETCHER, Appellant,

v.

INDIANAPOLIS AND SOUTHEASTERN
TRAILWAYS, INC., and James Harvey Brewer, Appellees.

Court of Appeals of Kentucky.

Jan. 22, 1965.

Allen & Clontz, Mt. Vernon, Smith, Reed, Yessin & Davis, Frankfort, for appellant.

Joseph J. Leary, Thomas F. Marshall, Frankfort, for appellees.

GEORGE O. BERTRAM, Special Commissioner.

Appellant was plaintiff in the lower court and appellees defendants. They will be referred to as they appeared in the trial court. In his complaint plaintiff, a passenger on a motor bus operated by defendants, as owner and driver respectively, seeks damages for injuries allegedly sustained from an accident involving the bus and a station wagon. The accident occurred January 21, 1962. The complaint was filed August 11, 1962, and counsel for the bus company took plaintiff's discovery deposition September 26, 1962.

The bus company's counsel contends that plaintiff by his testimony on discovery absolved defendant bus company and its driver, defendant James Harvey Brewer, of any negligence; and that having repudiated his cause of action, the trial court was correct in sustaining defendant bus company's motion for summary judgment. Therefore, this appeal is prosecuted by plaintiff seeking reversal of the summary judgment dismissing the complaint as to defendant bus company.

The bus company counsel relies on the answers to the questions given by plaintiff on his discovery deposition, which are as follows:

"Q. 22. It was a station wagon? All right.

"A. And if I ain't mistaken it was a two-tone outfit. We was following it

and it was wet and must have made a lot of racket and he had slowed down some. All at once this station wagon turned left and he honked his horn. I was looking right down the highway but I didn't see no signal—could have been one down on the car because it had done turned, see. It turned off and he didn't have time to stop and he had to leave the road. When he left the road, why, it throwed people everywhere and I went on the arm of the seat of the bus and he cut this post off and swung back and he went a right smart little piece before he got back up on the road and stopped. I couldn't say— I told the gentleman sitting in front of me, I said, 'That hurt my back' but I didn't think it would amount to anything. It got to hurting worse all the time and he got out and went back and talked to this man and took our names and addresses and then he got in and pulled out.

"Q. 23. How far had the bus followed the station wagon in your judgment, either in distance or in time?

"A. Well, I wouldn't just say how far but it was a right smart little piece. But we was tolerable close to it.

"Q. 24. Four or 5 minutes?

"A. Yes, I'd think so, right smart little piece.

"Q. 25. Was the road reasonably straight?

"A. Yes, sir.

"Q. 26. Did all this occur in your view? You were looking out the windshield, weren't you?

"A. Yes, sir. I was watching right down there because it was wet and I was just looking, watching the road.

\*    \*    \*    \*    \*  ·  \*

"Q. 84. Do you recall, Mr. Fletcher, making this statement to an investigator of this case? This question and this answer: The question was, 'And did you see the car stop at any time prior to the time when the bus driver had to cut around him?' That was the question and the answer was: 'Well, he was so close to him he had done horned—you know—and he expected him to go on and he just stopped dead. Well, naturally the bus driver throwed us plumb up there to keep from hitting him. It wasn't the bus driver's fault at all.' Do you remember that?

"A. I didn't tell him that. He changed it some.

"Q. 85. How has he changed it?

"A. I said as he honked his horn, he honked his horn and turned left. That's what I told him. I didn't tell him anything else. But I say he had to leave the road to keep from running over him. That's what is on the recording.

\*    \*    \*    \*    \*    \*  ·

"Q. 92. Do you remember this question and this answer? Question: 'Do you feel this was the bus driver's fault?' Answer: 'No, sir, it ain't the bus driver's fault, no, sir.'

"A. That's right. Yes, sir, I said that. I said, 'I ain't no lawyer but that's my judgment.'

"Q. 93. You saw no fault in the bus driver?

"A. No. That's what I told him but I did not tell him he was stopped dead still, now.

\*    \*    \*    \*    \*    \*

"Q. 101. Your answer that it wasn't the bus driver's fault at all is in your opinion still true as you have testified here?

"A. Yes, but I'll tell you, I had been having from the 21st of January until up in March or the last of February I had been having from two to four pains a day. If I told him anything wrong I didn't mean to because I wanted to be honest about it.

"Q. 102. Well, you say now.

"A. I was trying to be honest about it."

We quote the following questions and answers from the discovery deposition given by plaintiff that we think important:

"Q. 35. How far was the bus from the station wagon when it stopped?

"A. It was right on it. That's how come him to leave the road. He would have run over him.

\*　\*　\*　\*　\*　\*

"Q. 46. But you believe that the bus was on its right of the center line and pretty nearly directly behind the station wagon or do you believe that the bus had pulled out to the left to pass him?

"A. Well, I wouldn't say about that. I couldn't be honest about it. It was awful foggy and raining and all. It could have been that it was over in the middle of the road—I wouldn't say. The station wagon, he turned and the bus driver honked his horn. He had to leave the road to keep from going over him.

\*　\*　\*　\*　\*　\*

"Q. 49. Can you think of anything the bus driver could have done that he didn't do to avoid an accident?

"A. Well, the only thing, he was just driving too close. He didn't have no time to stop.

"Q. 50. Well, if he was trying to pass, of course, he had to pull out to pass as he approached it. Don't you agree to that?

"A. Well, I don't know that he made any effort to pass. I couldn't say that.

"Q. 51. You don't know if he was passing or not?

"A. No.

"Q. 52. You don't know if he sounded the horn to pass?

"A. He didn't sound the horn until this man turned to go out. No, sir.

\*　\*　\*　\*　.\*　\*

"Q. 97. Did the station wagon slow down? Did it reduce its speed?

"A. Yes, sir.

"Q. 98. That you observed?

"A. Yes, sir."

The lower court in its summary judgment stated:

"The admissions made by the plaintiff in his pretrial deposition of September 26, 1962, to the effect that the operation of the bus of the defendant, Indianapolis & Southeastern Trailways, Inc., was not at fault in the suit, after having first testified that he was in a position to observe, and did observe how the accident happened, constitutes a judicial admission upon the part of the plaintiff \* \* \*."

The bus company counsel also contends that this Court in Bell v. Harmon, Ky., 284 S.W.2d 812, held statements under oath in a pretrial deposition constitute judicial admissions justifying the granting of a summary judgment. We are still of this opinion. However, it is our opinion that in this type of case negligence is based upon facts given by a party showing fault on the part of a driver and not upon his judgment as to whom he thinks may or may not be at fault. The statements in the pretrial deposition of plaintiff should be considered together and when so done we do not think in this case they constitute a judicial admission absolving defendants of all negli-

gence. We think the answers to questions 35, 46 and 49 create sufficient doubt whereby it would be impossible for it to be said that the Court could be fully satisfied that there is an absence of genuine and material factual issues when all doubts are resolved in favor of the party opposing the motion, as stated in Bell v. Harmon, supra.

For the reasons given the trial court, we feel, was in error in sustaining the motion for summary judgment. See Elpers v. Kimbel, Ky., 366 S.W.2d 157; Halbert v. Lange, 313 Ky. 648, 233 S.W.2d 278, and the citations therein.

We recommend that the judgment be reversed.

The opinion is approved by the Court and the judgment is reversed.