**Phillip L. BRYANT, Appellant,**

v.

**Thomas CORLEY and Patricia Joyce Corley, Appellees.**

Court of Appeals of Kentucky.

June 19, 1970.

James B. Lenihan, Hargadon, Hargadon, Lenihan & Harbolt, Louisville, for appellant.

John Sandidge, Louisville, T. C. Carroll, Shepherdsville, Robert Carter, Louisville, Thomas B. Givhan, Shepherdsville, for appellees.

PALMORE, Judge.

This case arose out of an automobile accident at the intersection of Blue Lick Road (Kentucky Highway 1450) and Hebron Lane in Bullitt County. The appellant, Bryant, driver of one of the cars, first sued the appellee Thomas Corley, driver of the other car, and then Corley's wife, Patricia, passenger in the Corley vehicle, brought a separate action against Bryant. The two suits were consolidated and resulted in a

verdict and judgment finding both Bryant and Thomas Corley at fault and awarding Patricia Corley $750 against Bryant.

In his appeal Bryant contends he was entitled to a directed verdict, principally on the basis of testimonial admissions made by Thomas Corley, and that the trial court erred in its instructions to the jury. Our conclusion that Bryant was entitled to a directed verdict on the issue of liability against Corley and a judgment n. o. v. on Mrs. Corley's claim against him obviates discussion of the instructions.

Hebron Lane runs north and south. Its northern terminus is at an elbow turn in Blue Lick Road, which approaches at right angles from the west and then turns north, so that Hebron Lane and the north-south portion of Blue Lick Road lie in one continuous course. To the unwary, Hebron Lane and the north-south portion of Blue Lick Road would appear to be one road and the east-west portion of Blue Lick Road another, but the evidence is the other way around and Hebron Lane, the county road, is the inferior highway. Both are blacktop roads of about the same width, 18 to 20 feet. There was no stop sign on either road, nor did either have a marked center line at the point of the accident.

Physically, the east-west road splits into a "Y" as it reaches the north-south road, forming a triangle bordered on the east by Hebron Lane, on the northwest by Blue Lick Road as it turns to the north, and on the southwest by a lane or lanes connecting Hebron Lane with the east-west portion of Blue Lick Road. What would otherwise have been the field of vision between vehicles approaching each other from the north and west was blocked by the elevation of the intervening terrain.

The accident happened at about 11:00 A.M. on a clear, dry day in September. Both Bryant and Corley resided about 1½ miles from the intersection and were familiar with it. As they approached the scene of the accident Corley was going south on Blue Lick Road intending to con-tinue straight ahead into Hebron Lane. As a matter of fact, he was under the mistaken impression that north-south traffic had the right-of-way over vehicles approaching from the west on Blue Lick Road. Bryant was moving eastward on the Blue Lick Road, and as he came around the curve to his left his car struck the right front fender and wheel of the Corley vehicle. From photographs introduced in evidence it would appear that the two vehicles were very nearly at right angles to each other when they collided. Both left skid marks on the pavement. After the impact Bryant's Volkswagen bounced back and turned around on Blue Lick Road and Corley's Ford veered left and came to rest facing to the southeast with its left front wheel on the east shoulder opposite the triangle.

In a pretrial deposition Corley fixed the point of impact in the southbound lane of traffic as it continues through the intersection into Hebron Lane but in the northbound lane of Blue Lick Road as it rounds the curve at the mouth of Hebron Lane, and he marked this point on a sketch filed with the deposition. At the trial he was called by Bryant to testify under cross-examination and at first denied that the accident had happened "in the northbound lane of traffic" but then explained the apparent inconsistency as follows:

Q. "Which would indicate the point of impact was to the south of the centerline of Blue Lick Road?"

A. "That is correct, but there are two northbound lanes."

Q. "Which one are you referring to, the one coming around the curve or one going straight ahead?"

A. "The one going straight ahead was not in the northbound lane. It was in the northbound lane coming around the curve."

Q. "In any event, it was to the south of the centerline of Blue Lick Road as it goes around the curve?"

A. "Yes, sir."

Q. "It would also be in the lane of the northbound traffic on Blue Lick Road?"

A. "Yes, sir."

Later, however, when called as a witness in behalf of himself and Mrs. Corley, and without any further explanation, he said that the point of impact was in the *southbound lane of Blue Lick Road* and marked the spot on two photographs. Confronted with a photograph which he acknowledged to show Bryant's skid marks, and which demonstrates beyond peradventure that these tracks ended in the northbound lane at about the same place he had indicated in his deposition, he asserted that the picture was distorted and was not an accurate representation.

Disregarding for a moment the exact location of the point of impact, Corley's version of the accident is that as he approached the intersection he reduced his speed to 30 or 35 m. p. h. and was "within about two or three car lengths of the accident" when he saw Bryant coming around the curve at a high rate of speed. He immediately applied his brakes and skidded 21 feet to the point of collision. In a subsequent discussion Corley, being "under the impression that the road, main road went straight ahead," asked Bryant why he did not stop, to which Bryant replied that there was no stop sign and he therefore had no intention of stopping. Corley made no claim that he either intended to or did give a signal indicating that he was going to proceed into Hebron Lane.

Bryant testified that he approached at a speed of about 30 m. p. h. but slowed down as he entered the curve, as follows:

Q. "Why did you do that?"

A. "Well, as it happened there was a—I knew there was a bad curve there and I didn't want to take a chance on somebody crossing in front of me and I also saw another car had come down Hebron Lane and he went straight on without stopping or any-thing and I was slowing down in case there was somebody else did the same thing."

Q. "How far were you from the other car, the Corley car when you first saw it?"

A. "Well, approximately 75 to 80 foot."

Q. "How far were you from the point of the accident?"

A. "I suppose about thirty feet, sir."

Q. "And how far was the car back from the point of the accident?"

A. "Well, I would say about fifty feet, maybe."

Q. "What did you do when you first saw the Corley car?"

A. "I saw him approaching the curve. Well, I didn't know whether or not he was going to go into Hebron Lane or not. I kept my eye on him to see what he was going to do and I didn't see no indication or hand signal or turn signal or anything like that. I thought he was going to come around the curve, you know, like he was supposed to."

Q. "When did you realize there was going to be an accident or think there might be an accident?"

A. "Well, not until the last minute. I suppose about 25 feet away from the impact there."

Q. "What happened at that time?"

A. "Well, whenever, at that moment, whenever I seen he wasn't going to go around the curve that he was coming on across, I hit my brakes and I guess at the time of the impact, I was going maybe ten or fifteen miles an hour and I slid, I suppose about 25 feet and when we hit, the impact knocked my car about 15 to 20 feet back away from where it hit."

Bryant cites a number of our previous decisions in support of the proposition that Corley's testimony stating that the collision occurred in the northbound driving lane of Blue Lick Road constituted a binding "judicial admission" which entitled Bryant to a directed verdict. Corley cites as many or more on the other side.

Cases in which a litigant's own testimony, having been contradicted either by his own or other testimony, has been held conclusive include Sutherland v. Davis, 286 Ky. 743, 151 S.W.2d 1021 (1941), in which the plaintiff-passenger was bound by her testimony showing that she knew the defendant-driver was drunk, though the defendant himself denied having been in that condition; Bell v. Harmon, Ky., 284 S.W.2d 812 (1955), in which the plaintiff-passenger was bound by his "unequivocal" testimony in a pretrial deposition that the defendant-driver was in his proper traffic lane when an oncoming vehicle swerved to the wrong side of the road and struck the defendant's vehicle head-on; Schoenbaechler v. Louisville Taxicab & Transfer Co., Ky., 328 S.W.2d 514 (1959), in which the plaintiff-pedestrian was bound by his pretrial testimony to the effect that he did not look to his left after cars coming from his right had passed, this being a "fact peculiarly within his own knowledge"; Zipperle v. Welsh, Ky., 352 S.W.2d 556 (1962), in which the plaintiff-passengers were bound by their testimony that their host, the defendant-driver, had the green light in her favor, that being the only issue of fact in the case; and Wandling v. Wandling, Ky., 357 S.W.2d 857 (1962), in which a plaintiff-passenger again was bound by her deposition and trial testimony unequivocally stating facts that precluded negligence on the part of the defendant-driver.

Cases in which the testimony in question was held not conclusive include City of Lexington v. Clarke, 290 Ky. 290, 160 S.W.2d 653 (1942), holding that an estimate of distance, being a matter of guesswork, is not binding; Halbert v. Lange, 313 Ky. 648, 233 S.W.2d 278, 280 (1950), another instance of estimating distance, holding that the conclusiveness of a party's testimony "is destroyed if and when [he] corrects his statements, explains them, or introduces other testimony showing that he could have been mistaken as to the facts;" Arnett v. Arnett, Ky., 293 S.W.2d 733 (1956), holding that the plaintiff-passenger's testimony tending to reflect on the defendant-driver's sobriety was not sufficiently definite and unequivocal to conclude the issue; Head v. Russell, Ky., 307 S.W.2d 557, 559 (1957), holding that the testimony of plaintiff-passengers to the effect that the defendant-driver had proper control of his car did not "establish unequivocally that the sole cause of the accident was the negligence of another;" Elpers v. Kimbel, Ky., 366 S.W.2d 157, 164 (1963), again holding that "broad legal conclusions" by plaintiff-passengers to the effect that the defendant-driver was operating his car properly "were of a character that entitled the plaintiffs to the benefit of other and more definite testimony;" McCallum v. Harris, Ky., 379 S.W.2d 438 (1964), holding that testimony of a "negative character," in that the plaintiff-passenger could not say whether the defendant-driver had done anything improper or failed to do something he should have done, essentially "admitted" nothing; and Fletcher v. Indianapolis & Southeastern Trailways, Ky., 386 S.W.2d 264 (1965), holding that the plaintiff-passenger's statement in a pretrial deposition to the effect that the driver of the defendant's bus was not at fault amounted to an opinion and not an admission of fact.

See also annotation, "Binding effect of party's own unfavorable testimony," 169 A.L.R. 798, and 9 Wigmore, Evidence, § 2594a (3d ed. 1940).

An extensive review of this subject was undertaken in Elpers v. Kimbel, Ky., 366 S.W.2d 157 (1963), and we expressed approval of Wigmore's rationale to the effect that there can be no rule of thumb, but each case should be tested on the basis of the over-all state of its own evidence. In other words, that a litigant

has made inconsistent statements on a critical issue of fact does not always and inexorably destroy his case. It depends to some extent on what the fact in issue is and what the rest of the evidence indicates. In the final analysis, the question adds up to whether upon the whole case, including but not limited to his self-stultification, a verdict in his favor would be unconscionable. The same is true when the witness whose testimony is under consideration does not happen to be one of the litigating parties. See, for example, Agee v. Hammons, Ky., 335 S.W.2d 732, 735 (1960), in which it was held that a verdict could not be allowed to stand on the self-contradictory evidence of a single witness on a crucial issue.

In the recent case of Baker v. Cox, Ky., 453 S.W.2d 756 (decided May 15, 1970), we held that a party's testimony that an adversary's automobile was on its right side of the road, having been first contradicted by her and then by the testimony of other witnesses, was not conclusive. In that case, as in this, the center of the highway was not marked by a dividing line, a circumstance from which it is possible to infer that the conflicting statements reflect nothing more than uncertainty.

Corley's last testimony with regard to the point of impact was corroborated by that of a deputy sheriff who testified that he had observed and measured the skid marks shortly after the accident. He denied that the marks shown in the photographs were the ones left by these particular vehicles. At one point, under cross-examination, he went so far as to say that the skid mark from Corley's *left* front wheel stopped at about the same place as did the skid mark from Bryant's *right* front wheel—a manifest impossibility. However, quite aside from the contradictory statements made by Corley, we are of the opinion that both Corley and the deputy sheriff are conclusively refuted by the physical facts, because it was not possible for the Bryant car to strike the Corley car the way it did and where Corley and the

deputy say it did unless Bryant came out of the ditch on the west side of Blue Lick Road. As a matter of fact, when asked categorically whether Bryant came over the center of the road Corley finally admitted that he did not know. His testimony and that of the deputy sheriff fixing the point of impact is the only evidence in the case tending to place any part of Bryant's car in its wrong lane at any time, and our conclusion is that as a matter of law it was incredible and therefore insufficient to support a verdict against Bryant. Cf. Lambert v. Miller's Adm'r, 277 Ky. 64, 125 S.W. 2d 1019, 1023 (1939).

Not only do the physical facts convict Corley on this point, so does the jury verdict against him, since that was the only basis on which he could have been found negligent. There remains, then, the question of whether the evidence reveals any other basis on which Bryant could have been found negligent. We know from his own testimony that he was aware of the dangerous nature of the intersection and anticipated the possibility that Corley might attempt to pass in front of him. Corley says he was coming at a high speed, but we do not think it could be said that Bryant's speed was a proximate causal factor in the accident. Bryant says he was watching Corley and that because he observed no signal of Corley's intent to leave Blue Lick Road and go down Hebron Lane he assumed (as he had the right to assume) that Corley would follow Blue Lick Road around the curve. As we see it, the only way Bryant could have avoided the collision was to stop until Corley had passed in one direction or the other, and there is nothing in the evidence to justify a conclusion that he had time and the opportunity to do so, particularly after becoming aware that Corley was going to proceed straight ahead.

■ The evidence was conclusive, and the jury found, that Corley was negligent. There was not enough evidence to support a finding that Bryant was negligent. Bry-

ant therefore was entitled to a directed verdict on both his claim against Corley and Mrs. Corley's claim against him.

The cause is reversed with directions that a judgment n. o. v. be entered for Bryant on Mrs. Corley's claim against him and that the issue of damages in Bryant's claim against Corley be submitted to trial.

MILLIKEN, NEIKIRK, OSBORNE, REED and STEINFELD, JJ., concurring.