RENDERED:  JANUARY 3, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1300-MR

GLENNISSA LEWIS-OVERBEY                APPELLANT

                  APPEAL FROM ROWAN CIRCUIT COURT
v.              HONORABLE DAVID A. BARBER, JUDGE
                  ACTION NO. 18-CI-90233

SHARON S. COLE AND STATE
FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY                     APPELLEES

OPINION
REVERSING AND
REMANDING

** ** ** ** **

BEFORE:  EASTON, ECKERLE, AND TAYLOR, JUDGES.

EASTON, JUDGE:  This appeal presents a question about judicial admissions in a negligence case, specifically a claim of personal injury resulting from a motor vehicle accident.  The Appellant ("Lewis-Overbey") argues the circuit court erred in granting a judgment notwithstanding the verdict ("JNOV").  The effect of the decision of the circuit court was to void the unanimous jury verdict finding

("Cole"), Lewis-Overbey's mother, 50% at fault for the accident. The basis for the circuit court's decision was a claimed judicial admission by Lewis-Overbey in a pretrial deposition. Concluding that the circuit court erred because Lewis-Overbey's statements were not judicial admissions, we reverse and remand.

FACTUAL AND PROCEDURAL BACKGROUND

On March 12, 2017, Cole and Lewis-Overbey went to see a movie at a cinema located in the New Towne Square in Morehead. After the movie, they were headed back home. Cole was driving her car with Lewis-Overbey as a front-seat passenger. Cole was driving along a lane in front of the cinema which eventually exits onto a street. This section of the New Town Square had the cinema and a restaurant with a large parking lot in front of both.

On the same date, Billy Garvin ("Garvin") was eating in the restaurant next to the cinema. His wife was with him. Unlike the cinema, the restaurant had parking spaces on one side and at the back of the building. On the other side of the restaurant and between it and the cinema was a lane with no parking spaces that ultimately formed a "T" intersection with the lane Cole was driving on. Driving his pick-up truck after leaving the restaurant and using this lane between the cinema and the restaurant, Garvin approached the intersection. There are no signs or markings of any kind regarding this intersection.

When both cars reached the intersection, they collided. The front of Garvin's truck scraped part of Cole's driver's side door and the back seat door. Although Cole, Garvin, and Garvin's wife were not injured, Lewis-Overbey said she hit her shoulder in the interior of Cole's car and was injured.[1]

Lewis-Overbey settled her personal injury claim against Garvin for his liability insurance policy limits of $25,000. Lewis-Overbey's insurance company, Appellee State Farm Mutual Automobile Insurance Company ("State Farm"), did not "front" this payment to preserve its subrogation rights against Garvin.[2] Lewis-Overbey then sued State Farm for underinsured motorist ("UIM") coverage.[3]

To ensure its ability to argue for apportionment of fault, State Farm filed a Third Party Complaint against Cole. This Third Party Complaint was later dismissed, and Lewis-Overbey amended her Complaint to assert a direct claim against Cole. The case proceeded with typical depositions of the drivers and Lewis-Overbey as well as medical expert discovery.

---

[1] Most of the evidence at the trial was about causation of the claimed personal injury, which was a rotator cuff tear. Experts gave conflicting evidence about whether the tear was caused by repeated use over time, or trauma from the accident, or both. The issues of causation of injury and resulting damages were not appealed.

[2] *Coots v. Allstate Ins. Co.*, 853 S.W.2d 895 (Ky. 1993), created this process.

[3] Lewis-Overbey later amended her Complaint to add claims of bad faith by State Farm. Such claims were bifurcated from the personal injury claim, and those issues are not before us.

State Farm latched on to an isolated statement by Lewis-Overbey in her deposition to the effect that she did not know of anything Cole could have done to avoid the collision. We will address the particulars of Lewis-Overbey's statements later. Arguing a fatal judicial admission, State Farm sought summary judgment, which was initially denied.[4] The case proceeded to a jury trial ending on May 31, 2023.

A unanimous jury found both drivers equally at fault. The jury awarded the medical expenses and lost wages sought and $10,000 for pain and suffering, although Lewis-Overbey had asked for $250,000 for pain and suffering. With the required reduction of damages for items payable as reparations benefits,[5] the result was a finding of liability for damages in the amount of $25,777.50 for each driver. As a consequence, Lewis-Overbey had established her UIM claim relating to Garvin in the amount of only $777.50.

Although Cole's motion for a directed verdict, including reliance on the supposed judicial admission, had been denied, the circuit court was persuaded to grant a JNOV to eliminate the judgment against Cole. This appeal follows.

---

[4] The circuit court went back and forth on the judicial admission question. First, summary judgment was denied, then granted, then set aside. A directed verdict was denied and then the judgment notwithstanding the verdict reversed that denial.

[5] Because tort liability for damages payable as reparations benefits has been eliminated, the circuit court properly reduced the damages judgment by $10,000, the available amount of benefits for Lewis-Overbey. *See Dudas v. Kaczmarek*, 652 S.W.2d 868 (Ky. 1983).

STANDARD OF REVIEW

We review a decision granting JNOV for clear error. *Moore v. Environmental Const. Corp.*, 147 S.W.3d 13, 16 (Ky. 2004). Usually, we would review the evidence presented to the jury. We then must draw all reasonable inferences most favorable to the verdict returned by the jury. We must uphold the granting of a JNOV if a reasonable person could not have found as the jury did. *Id*. But this case does not involve the sufficiency of the evidence to support the jury verdict. Rather, we must review whether a legal error has been made in the application of a judicial admission to bar the claim against Cole, even if other evidence might support the verdict. We review the legal conclusion that statements constitute judicial admissions *de novo*. *Zapp v. CSX Construction, Inc.*, 300 S.W.3d 219, 223 (Ky. App. 2009).

ANALYSIS

Because it will help us to understand whether the statements made by Lewis-Overbey were judicial admissions, we start with an assessment of what the factfinder had to decide in this negligence case. We note that the circuit court properly instructed the jury about the drivers' duties in this case. No party appealed any issue with respect to the jury instructions.

Specific duties of drivers may depend on the circumstances. Parking areas are considered to be "highways" with respect to traffic laws. KRS[6] 189.010(3). All drivers essentially must be careful. KRS 189.290. Drivers are often required to yield the right of way to other drivers. KRS 189.010(9).

At intersections, a driver on an inferior way must yield to the driver who is travelling on the superior way. *Daulton v. Reed*, 538 S.W.2d 306, 309 (Ky. 1976). Yet the driver using the superior way still must exercise care to avoid a collision. *Id*. Our examination of the evidence indicates that the lane used by Cole was the superior way.

Even if neither lane was superior, Garvin had the duty to yield to Cole. If an intersection does not clearly involve a superior and inferior way, then the driver approaching an intersection must yield to the approaching driver on his right. KRS 189.330(1). *See also Head v. Russell*, 307 S.W.2d 557, 559 (Ky. 1957).

Judicial admissions were initially addressed in a motor vehicle accident case in *Sutherland v. Davis*, 151 S.W.2d 1021 (Ky. 1941). Such an admission "may be defined to be a formal act done in the course of judicial proceedings which waives or dispenses with the necessity of producing evidence by the opponent and bars the party himself from disputing it; and, as a natural

---

[6] Kentucky Revised Statutes.

consequence, allows the judge to direct the jury to accept the admission as conclusive of the disputed fact." *Id*. at 1024.

As *Sutherland* illustrates, a true judicial admission must be a statement of *fact*. The plaintiff in *Sutherland* was a passenger in a vehicle operated by an intoxicated driver. She admitted that she knew the driver was intoxicated. In the by-gone days of contributory negligence, this fact barred the plaintiff from recovering from the driver. *Id*. at 1023-24.

A subsequent case also involved a passenger suing her driver. *Bell v. Harmon*, 284 S.W.2d 812 (Ky. 1955), is recognized by both sides in this case as a seminal case on judicial admissions. In *Bell*, the passenger specifically stated that her driver had never crossed the center line of the road and thus the collision with a vehicle coming from the other side had to be a result of the other driver crossing the line. *Id*. at 815.

The court in *Bell* borrowed from Missouri law quoting at length from *Mollman v. St. Louis Public Service Co.*, 192 S.W.2d 618 (Mo. App. 1946). What is significant from this Missouri case is the explanation that a judicial admission by the passenger stated basic facts, not opinions, within the personal knowledge of the passenger, and the facts stated, "if true, completely exonerated the driver[.]" *Id*. at 622.

What *Bell* made clear was that any judicial admission must be unequivocal as this word is used multiple times in the opinion. In *Zapp*, *supra*, we summarized the resulting rule: "A judicial admission is a formal statement concerning a disputed fact, made by a party during a judicial proceeding, that is adverse to that party, and that is deliberate, clear, and uncontradicted." *Id.* at 223. Statements of opinion as to who was at fault for an accident are not admitted facts and not judicial admissions. *Fletcher v. Indianapolis & Southeastern Trailways, Inc.*, 386 S.W.2d 264, 266 (Ky. 1965).

With this general statement of the rule for judicial admissions, we will detail Lewis-Overbey's actual statements in the context of what the drivers said at trial. Cole had said she never saw Garvin's truck before the impact. She denied trying to speed up to clear the intersection. But she agreed that had she been able to go a few feet further she would have gotten by Garvin and not been hit.[7] Garvin's overall testimony was that Cole saw him and sped up to get through the intersection. Garvin did not think he could have avoided the collision.

At the trial, Lewis-Overbey told the jury that she did not want them to find against her mother, after the circuit court had properly[8] sustained an objection

---

[7] Trial Record, May 31, 2023, at 10:05:56-10:06:10.

[8] The question sought an opinion about causation rather than having the witness simply state what she saw, heard, or otherwise experienced.

to a question asking Lewis-Overbey whether she thought her mother contributed to the accident. But Cole does not rely on any trial testimony. Rather, she uses a half-page selection from Lewis-Overbey's seventy-page deposition when Cole's attorney questioned her. We provide this statement in full:

> Q. The Complaint that's been filed, it says that Sharon Cole -- I'm just going to read it from here. It says "Sharon Cole operated her vehicle, in which Glennissa Lewis-Overbey was a passenger, in a negligent, careless and reckless manner, causing it to collide with the vehicle operated by Billy Garvin." Do you agree with that statement?
>
> A. No, I do not. She was not operating it recklessly.
>
> Q. And, in fact, I think you said earlier that you didn't know anything that Ms. Cole could have done to avoid it; is that fair?
>
> A. That is very fair.

Left out of Cole's analysis was an earlier deposition statement by Lewis-Overbey. At page 49, the following exchange occurred:

> Q. The police report indicates that your mother tried to speed up once she saw the other vehicle coming to avoid striking each other. Do you remember that?
>
> A. She may have. Because I told her, "Oh my, he's going to hit us."
>
> Q. Uh-huh.
>
> A. And she probably did.

In these circumstances, Lewis-Overbey did not make a fatal judicial admission. She did not make even an unequivocal statement of opinion. The first

statement Cole relies on is not unequivocal. Lewis-Overbey was asked about wording her attorney wrote in the Complaint. The response was an opinion, and it was qualified. She said only that her mother was not reckless. She did not deny negligence.

Lewis-Overbey followed this statement with a response to a leading question. She simply said she did not know of anything Cole could have done to avoid the collision. This is a general observation rather than a disclosure of specific facts which if true would preclude a finding of negligence.

We should not ignore the dynamic of the opposing parties being related. Cole and Lewis-Overbey were deposed on the same day. While the depositions were conducted remotely, we cannot be sure of when Cole may have been able to hear what Lewis-Overbey was saying. It is no doubt difficult to blame one's mother for causing an accident resulting in an injury to her child, especially if the blame is stated in the mother's presence.

In the closing arguments, Lewis-Overbey's attorney frankly commented on this. He reminded the jury that Lewis-Overbey did not blame her mother. The attorney said: "Of course, she is going to say that." The attorney then properly asked the jury to essentially disregard this, telling them that they

would decide who caused the accident and what percentages of fault should be assigned.[9]

We conclude our analysis with citation to *Elpers v. Kimbel*, 366 S.W.2d 157 (Ky. 1963). This well-written opinion was authored by the learned Commissioner Stanley. It also involved an intersectional collision where a trial court had granted a JNOV against passengers who had made claims against a driver who was related to them. Stanley noted that it would be unnatural for the passengers to place blame on their relative. *Id*. at 164.

One of the passengers, as in the present case, had made general statements about the driver saying that she did not think he had contributed to the collision. *Id*. at 162. Commissioner Stanley discussed a number of cases and concluded that the statements were not "clear and positive" admissions of controlling and specific facts as found in cases of judicial admission. *Id*. at 163. The JNOV was reversed. We reach the same conclusion in this case.

## CONCLUSION

The circuit court erred in concluding that the statements made by Lewis-Overbey were judicial admissions preventing her claim against Cole. We reverse the Rowan Circuit Court and remand this case for entry of a judgment consistent with the jury's verdict.

---

[9] Trial Record, May 31, 2023, at 2:32:38-2:32:57.

ALL CONCUR.


BRIEF FOR APPELLANT:

Blake Nolan
Lexington, Kentucky

BRIEF FOR APPELLEE SHARON S. COLE:

John J. Ellis
Morehead, Kentucky

BRIEF FOR APPELLEE
STATE FARM:

David B. Klapheke
Louisville, Kentucky

Robert B. Cetrulo
Edgewood, Kentucky